# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cr-00039** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **JEROME BATTLE** | ) | |

## MEMORANDUM and ORDER

Defendant Jerome Battle has filed a Motion to Dismiss Count 1 of the Superseding Indictment due to the government's alleged violation of the Interstate Agreement on Detainers Act, 18 U.S.C. app. 2 ("IAD" or "IADA"). (Doc. No. 88.) For the reasons set forth herein, the motion will be denied.

## I.  BACKGROUND

On February 13, 2019, the grand jury returned an Indictment charging Battle with being a previously convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). (Doc. No. 1.) An arrest warrant was issued the same day (Doc. No. 3), but it was not immediately served. At the time, as the defendant states in his Motion to Dismiss, Battle was "serving a state sentence and was in custody at a state facility within Davidson County." (Doc. No. 88, at 1.) He was apparently serving his sentence in the custody of the Davidson County Sheriff's Office ("DCSO"). (*Id.*) Thus, on the same day that the arrest warrant was issued, the United States lodged a detainer regarding the § 922(g) charge with the DCSO, advising the defendant that he had the right to be brought to federal custody and to stand trial within 180 days of his invocation of that right. (Doc. No. 88-1, at 1–2.) Battle signed the form, invoking his right to a speedy trial under the IAD.

In relevant part, the Detainer identifies the offense with which Battle had been charged and specifically states that the IAD applies to the detainer. (*Id.* at 1.) It requests that the DCSO "advise the subject that a Detainer has been filed against him/her and that under the IADA he/she has the right to demand speedy trial on the charges." (*Id.*) It directs the DCSO to "read or show" the form to the "subject" and states:

> You are hereby advised that a Detainer has been filed against you on 2/13/2019, on the basis of Federal criminal charges against you in U.S. District Court for the Middle District of Tennessee. . . . [Y]ou are hereby advised that you have the right to demand a speedy trial under the Interstate Agreement on Detainers Act (IADA). Under the IADA, you have the right to be brought to trial within 180 days after you have caused to be delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court, written notice of your request for a final disposition of the charges against you. . . . You are hereby advised that the 180-day time limit does not commence until your written notice of request of final disposition of the charges against you has actually been delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court.

(*Id.* at 1–2.) The form is signed by Battle and dated 2/13/2019, with the notation "I (do)" encircled, to indicate that he did exercise his right to demand a speedy trial on the charge. (*Id.* at 2.) In the section signed by the defendant, the form states:

> I understand that if I do request a speedy trial, this request will be delivered to the Office of the United States Attorney who caused the Detainer to be filed. I also understand that my right to a speedy trial under the IADA is the right to be brought to trial within 180 days after my written notice of request for a final disposition of the charges against me has actually been delivered to the appropriate U. S. Attorney and the appropriate U.S. District Court. I further understand that the 180-days time limit may be tolled by any delays attributed to me, and that I must periodically inquire as to whether my written notice of request for a final disposition of the charges against me bas been received by the appropriate U. S. Attorney and the appropriate U.S. District Court.

(*Id.*)

In addition, the Detainer instructs the facility receiving it, in bold-face, underlined type, to "provide one copy of the Detainer to the prisoner, return one copy of the Detainer to this office via e-mail or facsimile, and, if the prisoner demands a speedy trial, forward the Detainer together with

the Certificate of Inmate Status by registered or certified mail to the U.S. Attorney for the Middle District of Tennessee and the U.S. District Court for the Middle District of Tennessee." (*Id.* at 3.)

The United States acknowledges that it did, in fact, receive notice of Battle's written invocation of his right to a speedy trial under the IAD later the same day. (Doc. No. 90, at 3.) As a result, the United States filed a Petition for Writ of Habeas Corpus *ad prosequendum* the following day, on February 14, 2019. (Doc. No. 4.) Magistrate Judge Frensley granted the petition immediately, issuing a Writ of Habeas Corpus *ad prosequendum* that directed the United States Marshal to "produce[]" the defendant "before this Court as soon as is practical, to attend proceedings in this matter" and to be "retained in federal custody pending resolution of this matter." (Doc. No. 5.) Despite its issuance, the writ was apparently not executed by the U.S. Marshal.

Two hundred and seventeen days after the government admittedly received notice of Battle's IAD speedy trial request, on September 18, 2019, Battle was arrested and transferred from the custody of the DCSO to federal custody. (Doc. No. 8.) The United States filed a Motion for Detention the same day. (Doc. No. 7.) Magistrate Judge Frensley conducted the arraignment, and a detention hearing was set for September 24, 2019. (Doc. No. 9.) On that day, the defendant appeared with appointed counsel and was released on conditions. (Doc. Nos. 15, 16.) The Writ of Habeas Corpus *ad prosequendum* issued on February 14, 2019 was returned unexecuted on September 25, 2019, with the notation "Turned over to federal custody." (Doc. No. 14.)

On October 1, 2019, the court set a trial date of December 3, 2019, and on November 26, 2019, Battle, through counsel, filed the first of nine Motions to Continue Trial (Doc. Nos. 20, 25, 29, 33, 38, 41, 50, 57, 65), most of which were accompanied by a Waiver of Speedy Trial (Doc. Nos. 21, 28, 34, 42, 64), and each of which was duly granted. As of the filing of the seventh and

eighth Motions to Continue, however, Battle was in the custody of the Beckham County Sheriff's Office in Sayre, Oklahoma, having left the Middle District of Tennessee while on pretrial release and after having been accused of violating the conditions of pretrial release. (*See* Doc. Nos. 50, 57.)[1]

The Superseding Indictment was issued on August 23, 2021, presenting three charges. Count 1 is the original § 922(g) charge. Count 2 is for failure to appear in court on November 11, 2020, and Count 3 is a second § 922(g) charge based on alleged conduct on August 25, 2020. Following the denial of Battle's Motion to Suppress (Doc. No. 81) and his execution of yet another Waiver of Speedy Trial (Doc. No. 83) on December 1, 2021, the defendant filed his Motion to Dismiss Count 1 on December 20, 2021. (Doc. No. 88.) The United States opposes the motion. (Doc. No. 90.)

## II.    DISCUSSION

### A.    The IAD

The IAD "is a compact entered into by 48 states, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." *New York v. Hill*, 528 U.S. 110, 111 (2000). The compact "is designed 'to encourage the expeditious and orderly disposition of . . . charges'" and "prescribes procedures by which a member State may obtain for trial a prisoner incarcerated in another member jurisdiction and by which the prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction." *United States v. Mauro*, 436 U.S. 340, 343 (1978)

---

[1] The court conducted a hearing on November 9, 2020 and granted the United States' Motion for Detention. The defendant was instructed to self-surrender by 9:00 a.m. on November 10, 2020, but he did not do so, and a bench warrant for his arrest was issued. (Doc. Nos, 47–49.) Battle was eventually arrested and detained, following an initial appearance before Magistrate Judge Holmes, on June 2, 2021.

(citation omitted). Both the United States and Tennessee are parties to the compact. *Id.* at 354–55; Tenn. Code Ann. § 40-31-101.

Under the IAD, "[a] State seeking to bring charges against a prisoner in another State's custody begins the process by filing a detainer, which is a request by the State's criminal justice agency that the institution in which the prisoner is housed hold the prisoner for the agency or notify the agency when release is imminent." *Hill*, 528 U.S. at 112 (citing *Fex v. Michigan*, 507 U.S. 43, 44 (1993)). Once a detainer has been lodged against him, the prisoner "shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment," subject to continuances for good cause shown in open court. IAD § 2, art. III(a).

If a defendant is not brought to trial within the applicable statutory period, the IAD generally requires that the indictment be dismissed with prejudice. *Id.* § 2, art. V(c). However, when the receiving jurisdiction is the United States, the court must determine whether to dismiss with or without prejudice. *Id.* § 9(1). In determining whether to dismiss with or without prejudice, the court is expressly directed to consider "[t]he seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." *Id.*

## B.    Application of the IAD in this Case

The defendant argues simply that the United States, despite receiving notice on February 14, 2019, at the latest, of his "request for a final disposition" of the federal charge against him, IAD § 2, art. III(a), left Battle in state custody for an additional 215 days before taking him into federal custody and, by failing to execute the Writ of Habeas Corpus *ad prosequendum*, violated Battle's rights under the IAD.

The United States asserts that Battle's motion should be denied on the grounds that: (1) the IAD does not apply to his case, because Battle was in a county jail rather than a state penitentiary or prison at the time the detainer was lodged; (2) the IAD does not afford relief to Battle, because he received and accepted a trial date outside the 180-day IAD window immediately upon his arrival in federal custody and subsequently sought and was granted nine continuances of his trial date; (3) Battle did not strictly comply with the IAD by notifying the district court of his desire for a speedy trial; and (4) even if the United States had violated the IAD, dismissal without prejudice, rather than dismissal with prejudice, would be the appropriate remedy.

The court is not persuaded by the first two arguments but finds merit in the third and, consequently, does not reach the fourth.

### 1. The Fact that Battle Was in Jail Rather than Prison

The IAD applies to a prisoner "who is serving a term of imprisonment in any party State" and, more specifically, to a prisoner who "has entered upon a term of imprisonment in a penal or correctional institution of a party State." IAD § 2, art. III & IV(a). Citing *United States v. Taylor*, 173 F.3d 538, 541 (6th Cir. 1999), and *United States v. Glasgow*, 790 F.2d 446, 449 (6th Cir. 1985) (per curiam), the United States argues that the Sixth Circuit has held that the term "correctional facility" does not include a county jail. (*See* Doc. No. 90 at 7.)

In *Taylor*, the defendant alleged that the government had violated what is known as the "anti-shuttling" provision of the IAD, which requires that, "when an individual who has 'entered upon a term of imprisonment' in one jurisdiction (the 'sending state'), is removed to another jurisdiction (the 'receiving state') pursuant to a detainer, he must be tried in the receiving state before being returned to the sending state." *Taylor*, 173 F.3d at 540 (quoting IAD § 2, art. III(d)). When he was indicted by a federal grand jury and federal authorities lodged a detainer against him, Taylor was housed at the Shelby County Jail, "a holding facility for pretrial detainees." *Id.* At the

time, however, his parole in connection with a prior Tennessee conviction had already been revoked after a hearing, and he was in jail "awaiting transfer to a state correctional facility." *Id.* Three weeks after the detainer was lodged, a U.S. Marshal transported him from the Shelby County Jail to federal court in Memphis for his initial appearance. From there he was immediately returned to the Shelby County jail. Over the course of the next two weeks, when his arraignment and detention hearing were finally held, Taylor was shuttled back and forth between federal court and jail four times, each time requesting and being granted a continuance, until he finally pleaded not guilty. On that occasion, the court set a trial date and entered an order of detention pending trial, and Taylor was again returned to the Shelby County Jail. *Id.* Approximately two weeks later, Tennessee authorities transferred Taylor to a prison to serve his state parole violation sentence. At that point, U.S. Marshals then lodged a new detainer with the Tennessee Department of Corrections ("TDOC"). Two months later, pursuant to a new writ of habeas corpus *ad prosequendum*, Taylor was taken before the federal district court for another hearing and thereafter remained in federal custody.

The defendant argued that his "term of imprisonment" for purposes of the IAD began immediately after his parole was revoked and he was sentenced, even though he was returned to the Shelby County Jail. The United States argued that the "term of imprisonment" did not begin until Taylor was transferred from jail to a TDOC facility and, therefore, that the shuttles back and forth between the Shelby County Jail and federal court, prior to his transfer from the jail to a TDOC prison, did not violate the IAD's anti-shuttling provision. *Id.*

The Sixth Circuit noted that it had already held that the IAD does not pertain to pretrial detainees. *Id.* at 541 (citing *United States v. Roberts*, 548 F.2d 665 (6th Cir. 1977)). Further, in *Glasgow*, it had held that the IAD's time limits were not applicable to a defendant "being held in

a county jail who was sentenced to a prison term in the state prison and transferred to federal custody the next day because the 'defendant never actually began serving his state term of imprisonment in a state correctional facility." *Id.* (quoting *Glasgow*, 790 F.2d at 449). In *Taylor*, the court recognized that, even then, there was "sharp disagreement among courts as to whether the IAD is triggered when a detainer is lodged against a convicted and sentenced prisoner who is being held in temporary custody pending a transfer to his permanent incarceration." *Id.* After reviewing relevant cases from other jurisdictions, the court ultimately concluded that the term "correctional facility" is "correctly understood as meaning the state facility to which the Defendant is ultimately assigned, not the local facility in which he sits awaiting transfer to that facility." *Id.*; *accord Jenkins v. United States*, 394 F.3d 407, 413 (6th Cir. 2005).

*Taylor* appears to remain binding on this court. That said, the case does not actually appear to be *applicable* here. Battle asserts, and the United States does not dispute, that Battle was "serving a state sentence and was in custody at a state facility within Davidson County" at the time the federal detainer was lodged. (Doc. No. 88, at 1.) There is no indication in the record that Battle was awaiting transfer to a different facility to serve his sentence. Moreover, the court takes judicial notice that the DCSO has the ability to house locally sentenced felons at any of its facilities. In other words, it appears that Battle had apparently already been sentenced and had "entered upon a term of imprisonment in a penal or correctional institution of a party State"—the DCSO facility being the state facility to which he was "ultimately assigned," *Taylor*, 173 F.3d at 540, and in which he was serving his sentence—when the federal detainer was lodged. IAD § 2(a).

Finding *Taylor* to be inapplicable under these circumstances, the court rejects the United States' argument that the IAD is inapplicable simply because Battle was "not in a state penitentiary at the time a detainer was lodged." (Doc. No. 90, at 6.)

## 2.    The Effect of Battle's Requests for Continuances

Citing *New York v. Hill*, 528 U.S. 110 (2000), the United States argues that Battle "cannot seek dismissal of the Indictment under the IAD's 180-day speedy trial right because he specifically received and accepted a trial date outside of that window." (Doc. No. 90, at 8.) The government also asserts that, because Battle's case was "set for trial immediately upon his arrival in federal custody" and Battle thereafter moved nine times to continue the trial date, he waived any right to object to not having been tried within the IAD's 180-day window.

In *Hill* and the other cases cited by the United States, the defendant agreed to a continuance of his trial date and was deemed to waive any objection under the IAD *before* the IAD's 180-day window expired. The Supreme Court in *Hill* was expressly called upon to construe an IAD provision that requires a prisoner, upon request, to be "brought to trial within one hundred eighty days," "provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." *Hill*, 528 U.S. at 112 (quoting IAD § 2, art. III(a)); *see also Wells v. Withrow*, 195 F. App'x 425, 428 (6th Cir. 2006) (finding that defense counsel waived the defendant's IAD rights by "failing to object" to the setting of a trial date outside the 180-day IAD window at a hearing conducted within the 180-day window). In this case, however, the 180-day IAD window expired well before the defendant was taken into federal custody and appointed counsel in the federal proceeding. As a result, *Hill* and the other cases do not support the government's position.[2]

---

[2] In *Fex v. Michigan*, the Supreme Court noted that several courts have held that "a continuance must be requested and granted before the 180-day period has expired." 507 U.S. 43, 51 n.5 (1993) (collecting cases). The United States has not directed this court to any Sixth Circuit opinion considering the issue. The Supreme Court in *Fex* "express[ed] no view on this point." *Id.*

Moreover, while the Sixth Circuit has not always required literal compliance with the procedural requirements of the IAD's continuance provisions when it is the defendant, rather than the prosecution, who requests the continuance, it has held that, when a "putative violation" of the IAD has occurred, the court "has an obligation to scrutinize each continuance request made by a defendant to determine whether or not the request amounted to a waiver of the procedural and substantive rights guaranteed by that provision." *United States v. Crozier*, 259 F.3d 503, 515 (6th Cir. 2001).

Congress placed the "burden of compliance" with the provisions of the IAD on the United States, not the defendant. *United States v. Eaddy*, 595 F.2d 341, 345 (6th Cir. 1979). The court finds that the United States has not carried its burden of showing that Battle effectively waived his IAD rights by agreeing to continuances after the 180-day IAD window had already closed.

   3.   *Battle's Failure to Notify the Court of His Desire for a Speedy Trial*

Next, the United States argues that the Sixth Circuit is a "strict compliance jurisdiction" and that Battle's motion must be denied, because he never notified this court of his desire to invoke his speedy trial rights under the IAD, even though it is undisputed that the U.S. Attorney received notice of the request on February 13, 2019. (Doc. No. 90, at 3, 12–14 (citing *United States v. White*, 185 F. App'x 504 (6th Cir. 2006); *Norton v. Parke*, 892 F.2d 476, 480–81 (6th Cir. 1989)).) The court finds this argument to be meritorious and will deny the defendant's motion on this basis.

In *Fex v. Michigan*, the Supreme Court was called upon to construe the phrase "shall have caused to be delivered" in the context of the IAD requirement that a prisoner be brought to trial within 180 days after he has "caused to be delivered to the prosecuting officer and the appropriate court . . . written notice of the place of his imprisonment and his request for a final disposition." IAD § 2, art. III(a). The question posed was whether the notice was *caused* to be delivered when it was placed in the mail, or caused to be *delivered* when received by the prosecuting authorities.

The Court acknowledged that, although the phrase could reasonably be interpreted to mean either, the emphasis of the provision should be placed on delivery, such that 180-day period was triggered upon actual delivery of the prisoner's notice of his invocation of his speedy trial rights under the IAD to both "the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Fex*, 507 U.S. at 52.

The Sixth Circuit, following *Fex*, has held that a defendant's strict compliance with the procedural requirements of the IAD is required in order for the defendant to claim the protection afforded by the IAD, while simultaneously noting, in *dicta*, that strict compliance might be relaxed under appropriate circumstances. Thus, for example, in *United States v. White*, the defendant asserted that he triggered the running of the IAD on the day he sent his speedy trial demand to the officials at the state prison where he was housed. *White*, 185 F. App'x at 507. He argued that it was not his fault that the prison authorities did not comply with their obligation to forward his request to the prosecutor and court of the "receiving State," that is, the United States. *Id.* at 507–08. He argued that "strict compliance" with the IAD should not be required, because he had "done everything possible to comply with the IAD, and it is the custodial state that is responsible for the prisoner's default." *Id.* at 507–08 (quoting *Norton v. Parke*, 892 F.2d 476, 481 (6th Cir. 1989)). The Sixth Circuit rejected that argument, finding that *Fex* controlled, but noting, "[e]ven assuming that substantial compliance with the IADA may sometimes be permissible, we conclude that this is not such a case. It would be unfair to penalize the Government in this case when neither the U.S. Attorney's Office nor the district court received notice of White's speedy trial request." *Id.* at 509.

It appears that most of the other Sixth Circuit opinions considering whether the 180-day period has been triggered involve situations in which neither the U.S. Attorney nor the relevant district court received notice of the defendant's request for a speedy trial under the IAD or

situations in which the defendant did not affirmatively make a request for a speedy trial under the IAD. *See, e.g.*, *United States v. Martinez*, 59 F. App'x 638, 644 (6th Cir. 2003) (affirming the denial of relief, where the defendant's purported request did not "specifically invoke[] the IAD, nor even request[] a trial" and, therefore, that the defendant did not "comply with the IAD formalities necessary to trigger the 180-day provision"); *United States v. Aldridge*, 85 F.3d 629 (6th Cir. 1996) ("Neither the prosecuting office nor the court had notice of the defendant's request for a speedy trial, and therefore the 180-day time limit could not begin to run under the Court's reasoning and holding in *Fex*."). *See also United States v. Faught*, No. 3:18-CR-00186, 2021 WL 288756, at *4 (M.D. Tenn. Jan. 27, 2021) (Campbell, J.) (citing *White* and *Norton* for the proposition that strict compliance with the IAD may not be required when the prisoner has "done everything possible to comply with the IAD," but finding no exception warranted in that case, because the prisoner's letter to the Clerk of Court, also received by the U.S. Attorney when it was filed, could not "reasonably be construed as demanding a speedy disposition of the federal charges").

In *Martinez*, the court construed *Norton* as "propos[ing] an exception" to be applied "only in the rare circumstance of inaccessibility, such as where the IAD forms were deliberately withheld." *Martinez*, 59 F. App'x at 643 (citing *Norton*, 892 F.2d at 481). It does not appear that the Sixth Circuit has ever actually applied this exception, nor is the court aware of any district court decision applying it or even considering whether the exception should apply to the situation here—where the "prosecuting officer" has notice of the prisoner's demand for a speedy trial but the receiving court does not. However, in *United States v. Paredes-Batista*, 140 F.3d 367 (2d Cir. 1998), also referenced in *White*, the defendant had followed the procedure set out by the U.S. Marshal's office in USM-17 form by signing a speedy trial request and forwarding it to prison

officials, who, in turn, complied with the form's directions to return the executed form to the U.S. Marshal's office. *Id.* at 373. The U.S. Marshal's ordinary practice was to promptly forward such a form to the U.S. Attorney's office and to the district court, but this procedure was not followed in that case. Instead, the documents did not come to the attention of either the U.S. Attorney or the district court until seven months later—at the pretrial conference before the district judge. *Id.*

As the Second Circuit (and district court) noted, USM-17 form was deficient, insofar as it failed to notify the defendant of his rights under the IAD or to alert him of the need to "monitor and police his speedy trial rights." *Id.* The Second Circuit nonetheless affirmed the district court's denial of the defendant's motion to dismiss the indictment, noting that there was no evidence of bad faith or affirmative misconduct on the part of the U.S. Marshal's office, and the plain language of the IAD requires *delivery* of the notice of a defendant's invocation of his rights under the IAD to both the prosecutor and the relevant court. *Id.* at 374 (citing *Fex*, 507 U.S. at 52). The court accepted, *arguendo*, that "delivery of the request to the U.S. Marshals' office . . . was sufficient under a theory of agency to constitute delivery to the 'prosecuting officer,'" but nonetheless concluded that the request "did not become effective and start the 180-day clock until it was *also* delivered to the district court," which did not occur until seven months later. *Id.* (emphasis in original) (citation omitted). In reaching that conclusion, the court also noted that the *Fex* Court had rejected the argument that the delivery rule was "unfair to prisoners who 'ha[ve] little ability to enforce compliance' with IAD delivery requirements, and thus would be at the mercy of administrative delays and mishaps in their efforts to obtain a speedy trial," as such arguments were "more appropriately addressed to the legislatures of the contracting States." *Id.* (quoting *Fex*, 507 U.S. at 52).

Likewise, in *United States v. Collins*, 90 F.3d 1420 (9th Cir. 1996), the parties agreed that "delivery [of the defendant's IAD request] to the U.S. Marshal fulfilled the requirement of delivery to the prosecuting officer." *Id.* at 1426. The Ninth Circuit, however, held that delivery of an IAD speedy trial request to U.S. Marshal's office did not constitute delivery to the district court, "because the Marshals are not agents for the court for purposes of accepting every request they find thrust upon them." *Id.* As a result, the 180-day clock did not begin to run until the U.S. Marshal's office filed the request, which constituted delivery to the court. The court stated: "*Fex* instructs us that the IADA means what it says. And when it says that the prisoner must have his demand 'delivered to the . . . appropriate court,' that is what it means." *Id.* (quoting IAD, § 2 art. III(a)).

In this case, the notice provided to Battle, unlike the USM-17 form at issue in *Paredes-Batista*, actually notified him that he had the right to a trial 180 days after he had "caused to be delivered to the appropriate U.S. Attorney *and the appropriate U.S. District Court*" written notice of his request for a final disposition of the federal charges. (Doc. No. 88-1, at 2 (emphasis added).) Further, the form notified him that the 180-day period did not begin to run until his written request "has actually been delivered to the appropriate U.S. Attorney and the appropriate U.S. District Court" and that he had an obligation to "periodically inquire" as to whether his request had been "received by the appropriate U.S. Attorney and the appropriate U.S. District Court." (*Id.*) Although the DCSO apparently failed to comply with the directive that it mail the defendant's form to the U.S. District Court, and Battle cannot be charged with that failure, there is also no evidence that the "IAD forms were deliberately withheld" from him, *Martinez*, 59 F. App'x at 643, or that there was bad faith or affirmative misconduct on the part of the DCSO. There is also no suggestion that

Battle made any effort to confirm whether his request had been delivered to the district court or to bring it to the court's attention at any point prior to his filing of the Motion to Dismiss.

Under the circumstances presented here, the court finds that an exception to the strict compliance rule adopted by the Sixth Circuit is not warranted. Because the district court was never notified of Battle's "request for a final disposition" of the federal charges until the filing of the Motion to Dismiss, the 180-day period was never triggered, and Battle's rights under the IAD were not violated.

### III.    CONCLUSION AND ORDER

For the reasons set forth herein, Battle's Motion to Dismiss (Doc. No. 88) is **DENIED**.

It is so **ORDERED**.

ALETA A. TRAUGER
United States District Judge